UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

ROBOTEK CONTRACTING
& CONSULTING, LLC,

    Debtor.
_____/

Case No. 08-33312-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

Opinion Regarding Objection to Vacation Pay Claims

Facts

From October 2001 until July 11, 2008, Robotek Contracting & Consulting, LLC ("Robotek") was in the business of programming industrial robots. On June 17, 2008, a judgment was entered against Robotek and in favor of Margni, Inc. ("Margni") in the amount of $900,000.00. On July 8, 2008, Margni served a writ of garnishment on Comerica Bank, and Comerica Bank froze Robotek's account. Margni also served writs of garnishment on certain customers of Robotek, resulting in accounts receivable being withheld by those customers. Robotek decided to terminate its operations effective upon the close of business on July 11, 2008.

On July 11, 2008, Robotek issued to its employees a "Notice of Permanent Layoff and Separation Agreement and Full and Final Release" ("Separation Agreement"). With regard to other termination benefits, the Separation Agreement provided as follows:

> Under this arrangement, and except as specifically stated in this letter, you acknowledge and agree that you are not entitled to receive any other benefits or compensation as a terminating employee of the Company under any Company practice, policy, or otherwise, other than: a) your normal compensation for work performed for the period May 31, 2008 through today; b) any earned but unused vacation days as normally payable upon termination, if any; c) any expense payments due to you in accordance with our normal expense payment policies, for

1

the period June 1, 2008 through today; and any retirement contribution required to be made by Robotek on your behalf since its last contribution so made, through today. You further acknowledge that, except as specified in this paragraph, you have been fully and properly compensated for all work through today. Since your termination is a layoff, you may be entitled to receive unemployment compensation. That entitlement, though, may be subject to setoffs required by the State of Michigan and is solely controlled by the rules of the State of Michigan.

On August 17, 2008, Robotek filed its chapter 7 bankruptcy petition. Various former Robotek employees ("Wage Claimants") filed proofs of claims for the amounts owed to them under the terms of the Separation Agreement and sought allowance of their claims as priority claims pursuant to 11 U.S.C. § 507(a)(4). On February 4, 2009, Margni filed objections to the Wage Claimants' claims, but it failed to serve notices of its objections at that time. In December 2010, Margni served the notices of its objections to those claims. A preliminary hearing was held on January 26, 2011, and additional hearings were held on March 30, 2011, May 25, 2011, and October 4, 2011. The only remaining issue with regard to Margni's objections is whether the Wage Claimants are entitled to payments for earned but unused vacation time under the Separation Agreement.

On November 17, 2011, the Trustee filed objections to the Wage Claimants' claims. A hearing was held on January 11, 2012, at which the Court heard oral arguments with regard to both the Trustee's and Margni's objections to the Wage Claimants' claims. At the conclusion of that hearing, the Court took those matters under advisement.

On February 28, 2012, the Court issued an Opinion Regarding Objections to Severance and Vacation Pay Claims (Docket No. 287) and, on March 8, 2012, the Court entered an Order effectuating such. The Court denied the Trustee's Objections to the Wage Claimants' Claims and concluded that an ambiguity existed with regard to the vacation pay provision of the Separation Agreement. The Court set an evidentiary hearing for April 11, 2012 to allow the

2

parties to present evidence to explain the ambiguity in the vacation pay provision of the Separation Agreement. The parties indicated at the March 30, 2012, status conference that they would rely upon affidavits and counter-affidavits in lieu of providing evidence at the scheduled evidentiary hearing. On March 26, 2012, the Court entered an Order Setting Deadlines with regard to the filing of affidavits and counter-affidavits. The Wage Claimants filed an affidavit on March 19, 2012 and Margni did not file a counter-affidavit. Pertinent portions of the affidavit of Michael Wylie are part of the Court's Findings of Fact and are identified later in this Opinion.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 157(a), 157 (b)(1), 1334(a), and E.D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

## Analysis

The only remaining issue with regard to Margni's objections is whether the Wage Claimants are entitled to payments for earned but unused vacation time under the Separation Agreement. Margni argues that the Wage Claimants are not entitled to payments for earned but unused vacation time under the terms of the Separation Agreement and the Employee Handbook. The Wage Claimants argue that they are entitled to payments for earned but unused vacation time under the terms of the Separation Agreement because the Separation Agreement modified or amended Robotek's policies regarding earned but unused vacation days as set forth in the Employee Handbook. In its Opinion Regarding Objections to Severance and Vacation Pay Claims, the Court concluded that the vacation pay provision in the Settlement Agreement was ambiguous.

Under Michigan law, the goal of contract interpretation is to read the document as a whole and apply the plain language used in order to honor the intent of the parties. *Dobbelaere v. Auto–Owners Ins. Co.,* 275 Mich. App. 527, 529 (2007). "If the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas. Co. v. Sokolowski,* 374 Mich. 340, 342 (1965).

With regard to earned but unused vacation pay, the Separation Agreement states:

> Under this arrangement, and except as specifically stated in this letter, you acknowledge and agree that you are not entitled to receive any other benefits or compensation as a terminating employee of the Company under any Company practice, policy, or otherwise, other than: . . . ***any earned but unused vacation days as normally payable upon termination, if any*** . . .

(emphasis added).

As the Court stated in its Opinion Regarding Objections to Severance and Vacation Pay Claims:

> The Separation Agreement states that the Wage Claimants are not entitled to any compensation other than "any earned but unused vacation days as normally payable upon termination, if any." Based on this language alone, there is a question as to what compensation for earned but unused vacation day is "normally payable" by Robotek upon termination. It is clear that the Court must look to some other source, whether it be the Employee Handbook, some past amendment or modification to the Employee Handbook, and/or Robotek's past general practices when it has terminated employees to determine whether the Wage Claimants are entitled to compensation for earned but unused vacation days. The Separation Agreement clearly does not specify how one would determine what compensation for earned but unused vacation days is "normally payable" by Robotek upon termination. Further, there is ambiguity with regard to the "if any" language used in that provision. That language can be read to mean that the Wage Claimants are entitled to compensation for any earned but unused vacation days only if (1) the individual Wage Claimants have earned but unused vacation days remaining at the date of termination, and, if they do not have any earned but unused vacation days, they will not be entitled to compensation; or (2) there is some Robotek policy in existence that would allow for payment of earned but unused vacation days, and, if there is no such policy in existence allowing for such, the Wage Claimants would not be entitled to compensation.

As noted, "[i]f the language of the contract . . . is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas. Co. v. Sokolowski,* 374 Mich. 340, 342 (1965). In lieu of providing testimony to explain the ambiguity, the parties chose to submit affidavits and counter-affidavits. The Wage Claimaints filed an Affidavit of Michael J. Wylie Regarding Vacation Pay. Michael Wylie, former president of Robotek, stated as follows:

> 6. At the time that the Separation Agreements were entered into, my intention, and that of Robotek, with respect to the italicized language in the [vacation pay provision], was that each of the employees would receive payment in full for any earned but unused vacation days.
>
> 7. Prior to the cessation by Robotek of its business, it had been a common practice for Robotek to pay its employees any vacation pay earned by them upon request by the employee. In other words, vacation pay accruals were treated as money owing to the employees, irrespective of whether they had actually taken vacation.
>
> 8. The term "as normally payable upon termination" was understood by me, at the time that the Separation Agreements were entered into, to mean that employees would receive payment promptly, with the precise timing of such payment to be governed by the company's payroll practices. Payroll was handled by an employee of Robotek and not by me personally, so I interpreted this language to mean that the person who handled payroll responsibilities for Robotek would determine precisely how and when to make payment of vacation pay.
>
> 9. The term, "if any" referred to the fact that some employees may have already received all vacation pay to which they were entitled.
>
> 10. My understanding of the meaning of those terms remains as it was when I executed the Separation Agreements on behalf of Robotek.
>
> 11. Because vacation pay was, in practice, payable to employees upon demand, and because the Separation Agreements provided for payment of vacation pay, employees of Robotek would have understood that they were to receive vacation pay under the Separation Agreements.

Margni did not file a counter-affidavit.

Margni argues that the Separation Agreement makes it clear that the Wage Claimants would only be entitled to payment for earned but unused vacation days if there was some Robotek policy that allowed for such. Margni also argues that the Employee Handbook set forth Robotek's policy regarding payment for earned by unused vacation days and that the Employee Handbook clearly does not provide for payment for such upon termination. The Wage Claimants argue that Robotek modified or amended its policy as stated in the Employee Handbook to allow for the payment of earned but unused vacation days when it entered into the Separation Agreements.

The Employee Handbook, Section 3.2e, entitled Pay In Lieu of Vacation and Pay upon Termination, states: "No employee will receive, or be entitled to receive, pay in lieu of vacation. No employee will receive, or be entitled to receive, pay for vacation time accrued and unused upon voluntary or involuntary termination of employment." There are several paragraphs of the Employee Handbook that provide some instruction regarding the intended scope and application of the provisions in the Employee Handbook. For instance, the Introduction to the Employee Handbook states:

> (1) *The Handbook contains only general information and guidelines. It is not intended to be a comprehensive guide, nor does it address all of the possible applications of, or exceptions to, the general policies and procedures described herein. For that reason, if you have any questions about the applicability of a policy or practice to you and/or your eligibility for a particular benefit, you should address your specific questions to the management team.*
>
> (2) *This Handbook is not intended to be an employment contract, nor is the Handbook intended to imply any type of contractual relationship. Further, the Handbook does not guarantee any fixed terms and conditions of employment. To the contrary, although we will certainly try to keep you informed of changes as they occur, the procedures, practices, policies and benefits described herein may be modified or discontinued at any time with or without prior notice.*
>
> (3) Your employment with Robotek is at-will. This means that your employment is subject to termination by your or the Company at any time, with or without case

> and with or without notice. Nothing in these policies shall be interpreted to be in conflict with or to eliminate or modify in any way your employment-at-will status. Only the President of the Company has the authority to enter into an agreement for employment for any specified period of time, or to make any agreement contrary to this at-will status. To be enforceable, such agreements, if any, must be in writing and signed by both you and the President of the Company.

(emphasis added). Further, the Verification of Receipt of Employee Handbook asks the employees to acknowledge that they understand "that this Handbook states the Company's policies and practices in effect as of the date of publication, March 2, 2006 . . . [and] that these policies and procedures are continually evaluated and may be amended, modified or terminated at any time with or without prior notice." It is clear that Robotek did not intend the Employee Handbook to be a binding agreement between it and its employees and that Robotek reserved the right to amend, modify, or terminate any of the policies and procedures set forth in the Employee Handbook at any time. In this Court's view, Robotek chose to amend or modify its policies and procedures with regard to payments for earned but unused vacation days when it chose to terminate its operations and it offered its employees the severance package set forth in the Separation Agreement.

The Court further concludes that Robotek intended to provide payments for earned but unused vacation days under the terms of the Separation Agreement. The statements made by Michael Wylie in his affidavit support that conclusion. Despite the language in the Employee Handbook regarding payment for earned but unused vacation days upon termination, prior to the cessation of the business it was Robotek's common practice to pay its employees for earned but unused vacation days upon request by the employee. Further, Michael Wylie stated that it was his intention, and that of Robotek, to pay employees for earned but unused vacation days at the time the Separation Agreements were entered into. Consistent with Michael Wylie's statements in his affidavit, the Court reads the "if any" language in the vacation pay provision to mean that

7

the individual Wage Claimants were entitled to payment for earned but unused vacation days remaining at the date of termination, and, if they did not have any earned but unused vacation days at the date of termination, they would not be entitled to any compensation. For those reasons, the Court concludes that the Wage Claimants are entitled to payments for earned but unused vacation days.

## Conclusion

For the reasons stated herein, the Court denies Margni's Objections to the Wage Claimants' Claims. Counsel for the Wage Claimants is directed to submit an order consistent with this Opinion.

.

```
Signed on April 10, 2012
                 /s/ Daniel S. Opperman
            Daniel S. Opperman
            United States Bankruptcy Judge
```